UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM GIORSOS,

Plaintiff,

-v.-

CITIGROUP TECHNOLOGY, INC.

Defendant.

07 CIV 9401 (LTS) (AJP)

**DEFENDANT'S NOTICE OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

PLEASE TAKE NOTICE that upon: (1) the attached Complaint filed by Plaintiff William Giorsos ("Plaintiff"); (2) the attached declaration of Kathleen Curcio and the exhibits submitted thereunder; and (3) the accompanying memorandum of law, the undersigned will move this Court, before the Honorable Laura Taylor Swain, United States District Judge in the Southern District of New York, United States Courthouse, 500 Pearl Street, Room 755, New York, New York 10007, on a date and time to be determined by the Court, for an order compelling arbitration and staying litigation with respect to all of Plaintiff's claims, and granting Defendant such other relief as the Court deems just, proper and equitable.

PLEASE TAKE FURTHER NOTICE that pursuant to the Individual Practices of Judge Laura Taylor Swain, Defendant has used its best efforts to resolve informally the matters raised in its submission. In particular, counsel for Defendant has requested, in conversations with Plaintiff's counsel on at least two separate occasions and in a detailed letter prior to making this motion, that pursuant to Defendant's arbitration policy, to which Plaintiff agreed, Plaintiff submit to arbitration the claims asserted in the Complaint.

Plaintiff's counsel has, however, advised counsel for Defendant that Plaintiff will not voluntarily consent to submit his claims to arbitration.

Dated: New York, New York
December 21, 2007

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

Attorneys for Defendant Citigroup Technology, Inc.

By: ______________________

Aimee B. Florin
666 Fifth Avenue
New York, New York 10103
212-506-5000

To: Patrick J. Boyd
The Boyd Law Group, PLLC
230 Park Avenue, Suite 1000
New York, New York 10160
212-808-3054

Attorneys for Plaintiff

**EXHIBIT 1**

JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM GIORSOS,

Plaintiff,

-against-

CITIGROUP TECHNOLOGY INC.,

Defendants.

07 CIV 9401

COMPLAINT

PLAINTIFF DEMANDS A TRIAL BY JURY

RECEIVED OCT 19 2007 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, William Giorsos ("Plaintiff" or "Plaintiff Giorsos"), by his attorneys, The Boyd Law Group, PLLC and through his Complaint against Defendant Citigroup Technology, Inc. ("Defendant" or "Defendant Citigroup" or "Citigroup Technology Inc." or "CTI"), alleges as follows:

THE PARTIES

1. Plaintiff Giorsos is a citizen of the State of New York. At all times relevant to the complaint at issue, Plaintiff resided at 132-09 80th Street, Ozone Park, NY 11417.

2. Plaintiff Giorsos is a U.S. citizen.

3. Plaintiff Giorsos suffers from heart disease, Sleep Apnea, and an enlarged prostate.

4. These conditions restrict Plaintiff's ability to perform major life activities.

5. Plaintiff Giorsos is a qualified individual with a disability for purposes of Federal, State and local law.

6. Plaintiff Giorsos has over twenty-two years experience as an Information Technology Auditor.

7. Plaintiff Giorsos has a positive work history and has worked for many major

financial institutions, banks, public accounting, and consulting firms where he held Supervisory and Manager positions.

8. Upon information and belief, Citigroup Technology Inc. is a division of Citigroup a large financial services company.

9. Upon information and belief, Defendant does substantial business in the State of New York.

## NATURE OF THE ACTION

10. This is a civil action for damages and remedies brought under The Americans with Disabilities Act (ADA) of 1990, 42 U.SC. 12101, as amended, *et seq.*, New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and New York City Human Rights Law, NYC Admin Code § 8-101 *et seq.*

11. Specifically, Defendant discriminated against Plaintiff Giorsos because of his disability, and their perception of his disability, by horribly and offensively harassing him and firing him for his complaints about such harassment.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1331 for civil actions arising under the laws of the United States and 28 U.S.C. 1343 for actions under laws providing for the protection of civil rights.

13. Declaratory and injunctive relief are sought under 28 U.S.C. § 2201 et seq.

14. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

ADMINISTRATIVE PREREQUISITES

15. Plaintiff Giorsos filed an Equal Employment Opportunity ("EEO") complaint of discrimination against Defendant on or about February 22, 2007.

16. The EEOC mailed a right to sue letter to Plaintiff and the undersigned counsel on or about July 24, 2007.

17. A copy of this right to sue is annexed hereto as Exhibit A.

FACTS

18. Plaintiff Giorsos worked for Respondent as a compliance officer for over two years and started his position with Respondent Citigroup (hereinafter "Respondent" or "Citigroup") on August 9, 2004.

19. Plaintiff Giorsos' starting salary was $98,000 per year.

20. Plaintiff Giorsos' performance in 2004 was satisfactory or better according to the 2004 Year End Performance Review issued by Respondent.

21. On or about January of 2005 Plaintiff Giorsos was praised on the Respondent's intranet for his positive work with the Independent Peer Review Group (hereinafter "IPR").

22. This write-up states that Plaintiff Giorsos' work was well received by project leaders and that he received complimentary remarks for his performance.

23. Plaintiff Giorsos was hospitalized from September 27, 2004 through and until October 7, 2004 for prostate problems – in particular for a urinary infection.

24. In August 2005, Plaintiff had surgery for Sleep Apnea and went on short-term

disability for his leave.

25. Respondents knew of Plaintiff Giorsos' leave and the condition that precipitated it.

26. Plaintiff Giorsos' condition did not keep him from working, but did require some minor allowances from his manager.

27. In fact, Plaintiff's manager at the time, Rich Martin (hereinafter "Mr. Martin"), understood that Plaintiff Giorsos was on medication and adjusting to his condition.

28. As a result, he afforded Plaintiff Giorsos the accommodations essential to his continued success.

29. Every Thursday, for example, Plaintiff Giorsos was permitted to field early morning conference calls from home – working later in the day to make up for the time lost by going into the office.

30. Plaintiff Giorsos frequently stayed late due to the amount of work, but the accommodations provided allowed him the flexibility essential for coping with his conditions.

31. As a result, Plaintiff Giorsos continued to do well and was a credit to Respondents.

32. In September of 2005, for example, Plaintiff Giorsos received a R.A.V.E. award for his extraordinary effort in leading the APPC Midrange and Wintel Peer Review in Singapore.

33. In December of 2005 Plaintiff Giorsos received another R.A.V.E. review for his excellent work with CTI to bring closure to many Peer Review Findings - over 300 issues were completed.

34. Consistent with these awards, Plaintiff Giorsos was rated in his 2005 review as satisfactory or better in all categories.

35. Based upon his solid performance Plaintiff Giorsos received a $2,000.00 raise

and a $9,000.00 bonus for his work in 2005.

36. Plaintiff Giorsos was told by his manager, Mr. Martin, that this bonus was higher than that of other people in the department and was rewarded because Plaintiff Giorsos deserved it.

37. This increase and bonus reflected Plaintiff Giorsos' success with Respondent for almost two years.

38. In February of 2006 Michael Caputo (hereinafter "Caputo") became Plaintiff Giorsos' new temporary supervisor.

39. Upon information and belief Caputo did not like Plaintiff Giorsos and took actions against him because of his disability.

40. In January, even before supervising Plaintiff Giorsos, Caputo observed some of the accommodations Mr. Martin provided.

41. Revealing his discriminatory animus, he commented to Plaintiff "you are lucky you don't work for me, you would not be here".

42. When Caputo did become Plaintiff's supervisor, Caputo denied Plaintiff Giorsos the accommodations he had received earlier.

43. Caputo did not, for example, permit Plaintiff to participate in calls from home.

44. Because of his discriminatory animus, Caputo also unfairly criticized Plaintiff Giorsos' work and harassed him for trivial things including talking too slow during the Thursday morning meetings.

45. Caputo deliberately humiliated Plaintiff Giorsos by arranging things so that Plaintiff Giorsos spoke last at meetings, and was not given the opportunity to discuss what projects he was currently working on with the rest of the team.

46. Caputo forced Plaintiff Giorsos to write and re-write reports and memos three (3) or more times without a legitimate reason.

47. Caputo often yelled at Plaintiff in the presence of other co-workers.

48. These co-workers actually moved out of the area to avoid listening to the humiliating diatribes and, on occasions, closed the Conference Room door where Caputo often yelled at Plaintiff.

49. Several of the co-workers told Plaintiff Giorsos that he should report Caputo's harassment to Human Resources.

50. In February or March of 2006 Plaintiff Giorsos overheard Caputo and Mr. Martin talking.

51. Caputo was clearly arguing that he wanted to dismiss Plaintiff Giorsos because of his medical conditions.

52. Mr. Martin said to Caputo that he could not fire Plaintiff because of his medical condition.

53. There were a few special projects that Caputo and Plaintiff Giorsos worked on together.

54. Whenever Plaintiff Giorsos started to speak during conferences calls about these projects, Caputo would always interrupt and take over the meetings.

55. Caputo complained that Plaintiff Giorsos was taking too long to speak and explain issues.

56. Plaintiff Giorsos had never been critiqued about this issue before or treated the way Caputo treated him.

57. Plaintiff Giorsos told Caputo that his conduct was humiliating and indicated that he thought Caputo was unfairly unsympathetic to Plaintiff's condition.

58. Caputo admitted that he had the tendency to get excitable and speak loudly at Plaintiff Giorsos.

59. Consistent with the discriminatory attack, in July of 2006, Caputo held a

meeting with Plaintiff Giorsos criticizing his work. This was the first meeting of the type Plaintiff Giorsos was ever asked to attend.

60. Plaintiff Giorsos questioned the review, and mentioned that his condition was a factor in his performance.

61. In fact, From February to May 2006, the Plaintiff Giorsos had several medical issues that were progressing.

62. Plaintiff had high cholesterol and high triglycerides.

63. Plaintiff Giorsos' LDL (bad cholesterol) was 2 ½ times higher than normal.

64. Plaintiff Giorsos' doctor mentioned that high rate of LDL can cause an individual to be tired and sleepy, and prescribed new cholesterol medication.

65. In May 2006, Plaintiff Giorsos had a doctor's appointment with his urologist.

66. The urologist determined that Plaintiff Giorsos' prostate was five times larger than normal.

67. With the enlarged prostate condition and the medication Plaintiff Giorsos was taking, it was necessary for Plaintiff Giorsos to use the bathroom between 2 and 3 times during the night and seriously affected his sleep.

68. Plaintiff Giorsos mentioned this to his department head Ms. Donna Vinci and Caputo during meetings and in a written performance update response.

69. Plaintiff Giorsos' comments about his condition were not recognized or appreciated.

70. Plaintiff Giorsos was not offered an accommodation and was not even allowed the flexible environment provided earlier though he requested the help.

71. Plaintiff Giorsos was not even allowed to send any e-mail without Caputo reviewing them first.

72. On November 9, 2006, Caputo's manner of yelling at Plaintiff Giorsos was

egregious enough that other employees commented about it, advising him to talk to Human Resources.

73. Plaintiff Giorsos contacted his Human Resources contact, and spoke with Corinne Baines (hereinafter "Ms. Baines"), explaining the discriminatory behavior he was being subjected to.

74. Ms. Baines told Plaintiff Giorsos that he should not have called, as the issue had nothing to do with Human Resources.

75. In fact, instead of investigating the matter, Ms. Baines contacted Caputo and told him what was discussed and the issue had nothing to do with Human Resources.

76. Caputo then summoned Plaintiff Giorsos into an office and started yelling at him in retaliation for the complaint.

77. A formal complaint was never recorded or investigated.

78. While Plaintiff Giorsos tried to work harder he was issued a final written warning on November 17, 2006 in clear retaliation for his complaint.

79. In a few short months, with his new supervisor, Plaintiff Giorsos' whole career was being judged differently and unfairly.

80. The November 17, 2006 warning issued by Caputo listed specific items Plaintiff Giorsos needed to complete in order to keep his job.

81. Plaintiff Giorsos worked hard and completed all the listed tasks, but he had already made the mistake of indicating that he believed that his unfair treatment was a product of discrimination based upon his disability.

82. As a result, in retaliation for Plaintiff Giorsos' complaint and consistent with the pattern of discrimination, Plaintiff Giorsos was fired in December of 2006.

83. This termination had no work related basis because Plaintiff had completed all the work he was told to complete ahead of schedule and to Caputo's satisfaction.

84. The discriminatory acts described above are a representative but not exhaustive list of those Plaintiff Giorsos has been subjected to.

85. Plaintiff Giorsos did suffer emotional distress as a result of the above-referenced incident.

86. Since his termination, Plaintiff Giorsos has endeavored to find a new position.

87. He has been invited to several interviews, and in two cases the prospective employers knew either Mr. Martin or Mr. Caputo or both.

88. In both cases Plaintiff Giorsos was not offered the job.

89. Upon information and belief Mr. Caputo and/or Mr. Martin provided poor references for Plaintiff and, thus, cost him a new opportunity.

**FIRST CAUSE OF ACTION**
**(Disability Discrimination in Violation of The Americans With Disabilities Act)**

90. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89 as if separately set forth herein.

91. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

92. Defendant is an employer within the meaning of the Americans with Disabilities Act.

93. Defendants harassed and retaliated against Plaintiff in retaliation for his objection to unlawful disability discrimination.

94. Plaintiff is, thus, entitled to relief.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of The Americans With Disabilities Act)**

95. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

94 as if separately set forth herein.

96. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

97. Defendant is an employer within the meaning of the Americans with Disabilities Act.

98. Defendants discriminated against and harassed Plaintiff in retaliation for his complaints about discrimination based upon his disability or perceived disability.

99. Plaintiff is, thus, entitled to relief.

**THIRD CAUSE OF ACTION**
**(Disability Discrimination in Violation of New York State Executive Law)**

100. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 99 as if separately set forth herein.

101. Plaintiff is a qualified individual with a disability within the meaning of the New York State Human Rights law.

102. Defendant is an employer within the meaning of the New York State Human Rights Law.

103. Defendants discriminated against and harassed Plaintiff based upon his disability or perceived disability in violation of the New York State Human Rights Law.

104. Plaintiff is, thus, entitled to relief.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of New York State Executive Law)**

105. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 104 as if separately set forth herein.

106. Plaintiff is a qualified individual with a disability within the meaning of the

New York State Executive Law.

107. Defendant is an employer within the meaning of the New York State Executive Law.

108. Defendants discriminated against and harassed Plaintiff based upon his disability or perceived disability in violation of the New York State Executive Law.

109. Plaintiff is, thus, entitled to relief.

**FIFTH CAUSE OF ACTION**
**(Disability Discrimination in Violation of the New York City Administrative Code)**

110. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 109 as if separately set forth herein.

111. Plaintiff is a qualified individual with a disability within the meaning of the New York City Administrative Code.

112. Defendant is an employer within the meaning of the New York City Administrative Code.

113. Defendant discriminated against and harassed Plaintiff because of his disability or perceived disability in violation of the New York City Administrative Code.

114. Plaintiff is, thus, entitled to relief.

**SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of New York City Administrative Code**

115. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 114 as if separately set forth herein.

116. Plaintiff is a qualified individual with a disability within the meaning of the New York City Administrative Code

117. Defendant is an employer within the meaning of the New York City

Administrative Code.

118. Defendants retaliated against Plaintiff based upon his complaints about disability discrimination in violation of the New York City Administrative Code.

119. Plaintiff is, thus, entitled to relief.

WHEREFORE, while reserving the right to seek additional damages and plead additional causes of action as available, Plaintiff demands judgment against Defendant as follows:

A. A declaratory judgment in favor of Plaintiff Giorsos, against Defendant, declaring that Defendant has violated The Americans with Disabilities Act and/or The New York State Executive Law and/or the New York City Administrative Code by discriminating against and retaliating against Plaintiff based upon his disability or perceived disability;

B. On the applicable all Causes of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

C. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 9, 2007

THE BOYD LAW GROUP, PLLC

By:____________________

Patrick J. Boyd (PB 0921)
Attorney for Plaintiff
230 Park Avenue, Suite 1000
New York, New York 10160
(212) 808-3054

10/25/07
12:25pm

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM GIORSOS,

Plaintiff,

-v.-

CITIGROUP TECHNOLOGY, INC.

Defendant.

07 CIV 9401 (LTS) (AJP)

**DECLARATION OF KATHLEEN CURCIO**

I, KATHLEEN CURCIO, affirm under the penalties of perjury as follows:

1. I am employed as a Senior Human Resources Generalist supporting the Technology group within the Citi Corporate Center of Citigroup Technology Inc. ("Citi"). In 2004 and since, my responsibilities have included the general oversight of recruiting, hiring and onboarding of Citi employees. This declaration is based upon records maintained by Citi in the ordinary course of its business and my own personal knowledge, and is submitted in support of Citi's motion to compel arbitration.

2. In connection with my employment, I am familiar with the process by which all new hires are required, as a condition of employment with Citi, to agree to submit all employment-related disputes to binding arbitration.

3. William Giorsos was employed by Citi in its Technology Infrastructure department from on or about August 9, 2004 to December 15, 2006. At the time of his hire, and as part of Citi's standard new hire process, all candidates, including Mr. Giorsos, who have been selected for hire receive a written offer letter from Citi, which incorporates by reference the Employee Handbook. (*See* Offer Letter dated July 23, 2004, provided to Mr. Giorsos, attached hereto as Exhibit A.) Citi's standard offer letter also references the New Hire Paperwork, and instructs the candidate to return the New Hire Paperwork with their signed offer letter.

4. The New Hire Paperwork includes the Principles of Employment, which contains a mandatory arbitration provision. (*See* Principles of Employment, attached hereto as Exhibit B.)

5. Prior to the commencement of employment, and along with the New Hire Paperwork, the candidate also receives, among other items, a copy of the Employee Handbook and an acknowledgment of receipt form. Among the policies set forth in the Handbook is an Employment Arbitration Policy, which again provides for mandatory arbitration of all employment-related disputes. (*See* Employment Arbitration Policy in effect at the time of Mr. Giorsos' hire and throughout his Citi employment, attached hereto as Exhibit C.)

6. Prior to commencing employment, the candidate is required to return signed copies of all forms contained in the New Hire packet including the Principles of Employment and the Handbook acknowledgement form. (*See* Exhibits A and B; Handbook Acknowledgment Form, attached hereto as Exhibit D.)

7. Mr. Giorsos was hired by Citi while the new hire process described above was in effect and the Employment Arbitration Policy was applicable. As a new hire and subsequently, as an employee, Mr. Giorsos would have received all of the referenced documents and would have acknowledged his receipt of same, including his agreement to submit all employment-related disputes to binding arbitration. If Mr. Giorsos had not done so, he would not have been permitted to work at Citi.

8. Signed copies of each of the referenced documents are maintained by the Company in each employee's personnel file. Prior to filing this motion, the Company conducted a diligent search for Mr. Giorsos' personnel file which contains all such documents; however, it has not yet been able to locate a copy of that file.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 21, 2007
December 21, 2007

Kathleen Curcio
Rutherford, New Jersey

# EXHIBIT A

7/23/2004

William Giorsos
132-09 80th Street
Ozone Park, NY 11417

Dear William:

We are delighted to extend to you an offer to join Citigroup Inc. (the "Company") as a Compliance Officer/Audit Liaison with the Technology Infrastructure department.

Your employment is contingent upon successful completion of any and all procedures and verifications to meet employment eligibility, including completion of a pre-employment drug screening; completion of reference checks and background criminal report; and your providing appropriate work authorization and completing an "I-9" form. Please do not resign from your current position until you receive notification from us of a satisfactory pre-employment drug screening. Please contact the New Hire Processing Center (toll-free) 1-800-251-2339, 24 hours after receiving this letter to arrange for a drug screening appointment.

Your starting compensation will consist of bi-monthly salary payments annualized to $98,000. You will also be eligible to participate in our comprehensive benefit programs.

In addition to your base salary, you will be eligible to be considered for a discretionary incentive award. Incentive awards will be determined at the discretion of management based on a variety of factors, including the Company's performance and your individual contribution. Incentive awards exceeding a certain pre-tax nominal value consist of both a cash bonus and a tax-deferred restricted or deferred stock award under the Company's Capital Accumulation Program ("CAP"). CAP program guidelines may be modified at management's discretion. CAP awards are subject to vesting conditions, including but not limited to continued employment, and will be cancelled if conditions of vesting are not met. In order to be eligible to receive any incentive award, you must be actively employed by the Company on the date the award is made.

All compensation and benefits are payable in accordance with the Company's compensation policies, plans and programs in effect at the time of payment. Further details regarding these policies, benefit plans and programs will be provided when you begin your employment. Please note that all Citigroup compensation, benefits and other policies, plans and programs are subject to change at management's discretion.

In consideration of your employment, you agree that while you are employed, and for one year following the termination of your employment, you will not directly or indirectly solicit, induce, or otherwise encourage any person to leave the employment of or terminate any customer relationship with Citigroup and any of its subsidiaries or affiliates.

You also agree that during your employment, you may have access to or acquire confidential, client, employee, competitive and/or other business information that is unique and cannot be

lawfully duplicated or easily acquired. You understand and agree that you will have a continuing obligation not to use, publish or otherwise disclose such information either during or after your employment with the Company.

This letter should not be construed as a promise or guarantee of employment with Citigroup for any defined period of time. Your employment relationship with Citigroup is "at will," which affords either party the right to terminate the relationship at any time for any reason or for no reason at all not otherwise prohibited by law.

This letter describes Citigroup's offer of employment. Any discussions that you may have had with us are not part of this offer unless they are described in this letter, the Corporate Employee Handbook, or the Citigroup Statement of Business Practices.

We are confident that Citigroup can offer you a rewarding and challenging career opportunity.

Sincerely,

Laura Joachim
Senior Recruiter

*Please sign as acceptance of the above. You must return the original offer letter with your New Hire Paperwork.*

August 9, 2004
START DATE

______________________________
Signature of Acceptance

______________________________
Date Signed

# EXHIBIT B

**PRINCIPLES OF EMPLOYMENT**
**(For Citigroup Corporate Center**
**New Hires and Transferees)**

As you consider our offer to become an employee of Citigroup Inc. or one of its subsidiaries (the "Company"), there are certain matters that we want to clarify.

- You must observe the policies that we publish from time to time for employees. These include a requirement that you maintain the highest standards of conduct and act within the highest ethical principles. You must not do anything that may be or appear to be a conflict of interest with your responsibilities as an employee. These expectations are included in the Company's Code of Conduct (*formerly* Statement of Business Practices) and the applicable Dispute Resolution Procedure, Employment Arbitration Policy and Employee Handbook, all of which are available for your review prior to your acceptance of employment if you choose to review them. You will be asked to acknowledge receiving copies of the current versions of these with your New Hire paperwork when you begin employment. ***Remember - It is your responsibility to read and understand these policies and expectations. If you have any questions, now or in the future, please ask.***

- You must never use (except when necessary in your employment with us) nor disclose to anyone not affiliated with the Company or any parent, subsidiary or affiliated company any confidential or unpublished information you obtain as a result of your employment with us. This applies both while you are employed with us and after that employment ends. If you leave our employ, you may not retain or take with you any writing or other record that relates to the above.

- Your employment with us requires your full attention. Any invention, development or improvement made by you during the time you are employed by us that pertains to our business belongs to us and you agree to assign any interest you have in these things to us upon our request.

- You agree to follow our dispute resolution/arbitration procedures for employment disputes. While we hope that disputes with our employees will never arise, we want them resolved promptly if they do arise. These procedures include any qualified employment disputes (including termination of employment) that you might have with the Company and its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees and agents.* These procedures do not preclude us from taking disciplinary action (including termination) at any time, but if you dispute such action, you and the Company agree that the disagreement will be resolved through this process. Our procedures are divided into two parts. First, an internal dispute procedure, the "Dispute Resolution Procedure,"

*These include without limitation all claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, and all amendments thereto, and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions of employment or termination of employment.

allows you to seek review of any action regarding your employment or termination of your employment that you think is unfair. Second, in the unusual situation when this internal procedure does not fully resolve an employment-related dispute and the dispute is based upon legally protected rights, you and the Company agree to submit the dispute, within the time provided by the applicable statute(s) of limitations, to binding arbitration with the American Arbitration Association ("AAA"), except that any dispute subject to the jurisdiction of the National Association of Securities Dealers ("NASD") will be submitted to binding arbitration with the NASD, in accordance with the arbitration rules of the applicable forum then in effect and as supplemented by the Company's Employment Arbitration Policy. A detailed description of these procedures is available in the Human Resources department for your review. ***Again, it is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions, now or in the future, please ask.***

- Nothing herein constitutes a contract of employment for a definite period of time. The employment relationship is "at will", which affords you or the Company the right to terminate the relationship at any time for any reason or no reason not otherwise prohibited by applicable law. The Company retains the right to decrease an employee's compensation and/or benefits, transfer or demote an employee, or otherwise change the terms or conditions of any employee's employment with the Company.

We believe these matters are important to you as an employee and to us as an employer. Your acceptance of our offer constitutes your acceptance of the aforementioned provisions.

Understood and agreed:

________________________ ________________________
Signature Date

________________________
Anticipated Start Date

# EXHIBIT C

citigroup

# U.S. Corporate Center

# EMPLOYEE HANDBOOK

WORKING TOGETHER:

OUR POLICIES, GUIDELINES,

AND EXPECTATIONS

# Introduction

This *Employee Handbook* ("Handbook") is your basic source of Human Resources information. It describes the key Human Resources policies, procedures, and guidelines for employees working in the Citigroup Corporate Center (the "Company") in the United States.

We expect each employee to read this *Handbook* carefully, as it is a valuable reference for understanding your responsibilities and the Company's policies. Its purpose is to familiarize you with what the Company expects from you and how you can be most successful in working for the Company. It is difficult to anticipate the almost infinite number of situations that can arise during the employment relationship, and this *Handbook* is not meant to cover every specific instance or operating procedure of your department. Additional operating procedures may be provided by your manager.

To respond to the changing needs of our employees and the Company, the Company reserves the right at any time to create, amend, supplement, modify, or rescind, in whole or in part, any policy, procedure, benefit, or provision of this *Handbook*, or the *Handbook* itself, as it deems appropriate, with or without notice. In the event of any conflict between the description of employee benefits in this *Handbook*, the Summary Plan Descriptions, or the plan documents, the plan documents, any changes thereto, and applicable laws shall govern.

Nothing contained in this *Handbook* (nor the *Handbook* itself) constitutes a contract of employment or a guarantee that your employment will continue for any specified period of time. Bear in mind that your employment with the Company is at will, which means it can be terminated by you or the Company at any time, with or without notice, for no reason or any reason not otherwise prohibited by law.

This *Handbook* supersedes any employee handbooks or employment policies that may have applied to you as an employee of the Company or Citigroup that are inconsistent with and precede this *Handbook*'s distribution. *Where the law of the state in which you work is more generous than the provisions in this* Handbook, *that state law will apply.*

If you have any questions about the interpretation or application of any information in this *Handbook*, or if you have a question not answered here, see your manager or Human Resources representative.

***Important: This* Handbook *contains a provision that requires you and the Company to submit employment-related disputes to binding arbitration (refer to Appendix). Please read that provision carefully. No provision in this* Handbook *or elsewhere is intended to constitute a waiver, nor to be construed to constitute a waiver, of your or the Company's right to compel arbitration of employment-related disputes based on legally protected rights.***

# Citigroup Corporate Center

## Employment Arbitration Policy (United States Only)

### STATEMENT OF INTENT

The Citigroup Corporate Center values each of its employees and looks forward to good relations with, and among, all of its employees. Occasionally, however, disagreements may arise between an individual employee and Citigroup Corporate Center or between employees in a context that involves Citigroup Corporate Center.

Citigroup Corporate Center believes that the resolution of such disagreements will be best accomplished by internal dispute resolution and, where that fails, by arbitration conducted under the auspices of the American Arbitration Association. For these reasons, Citigroup Corporate Center has adopted this Employment Arbitration Policy ("Policy").

The Policy applies to all persons employed by Citigroup Corporate Center and working in the United States as of January 1, 2001, and all employees joining Citigroup Corporate Center, as well as Citigroup Corporate Center employees relocating to the United States, after that date.

This Policy does not constitute a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Employment with Citigroup Corporate Center is a voluntary relationship for no definite period of time, and nothing in this Policy nor any other company document constitutes an express or implied contract of employment for any definite period of time.

This Policy does not constitute, nor should it be construed to constitute, a waiver by Citigroup Corporate Center of its rights under the "employment-at-will" doctrine, nor does it afford an employee or former employee any rights or remedies not otherwise available under applicable law.

### SCOPE OF THE POLICY

The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common law rights) that may arise between an employee or former employee and Citigroup Corporate Center or its current and former parents, subsidiaries, and affiliates and its and their current and former officers, directors, employees, and agents (and that are not resolved by the internal Dispute Resolution Procedure), including, without limitation, claims, demands, or actions under, as amended, Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act of 1988, and any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, conditions of employment, or termination of employment, breach of contract, or defamation.

The only disputes not covered by the Policy are claims that an employee or former employee may have regarding Workers' Compensation or unemployment compensation benefits. Nothing in this Policy shall prevent either party from seeking from any court of competent jurisdiction injunctive relief in aid of arbitration. The Policy does not exclude the National Labor Relations Board from jurisdiction over disputes covered by the National Labor Relations Act. Similarly, this Policy does not exclude the jurisdiction of the Equal Employment Opportunity Commission (the "EEOC") and/or state and local human rights agencies to investigate alleged violations of the laws enforced by the EEOC and/or these agencies.

This Policy does not require that Citigroup Corporate Center institute arbitration, nor is it required to follow the steps of the Dispute Resolution Procedure, before taking disciplinary action of any kind, including termination of employment.[2] However, if an employee disagrees with any such disciplinary action and believes that such action violated his or her legally protected rights, he or she may institute proceedings in accordance with the Policy. The results of the arbitration process are final and binding on the employee and Citigroup Corporate Center.

Certain employees or former employees are subject to the arbitration requirements of the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE"). This Policy applies to any such person only to the extent that (i) Citigroup Corporate Center waives its right to compel arbitration of such person's claim(s) to NASD or NYSE arbitration; (ii) such person's claim(s) are not eligible for submission to NASD or NYSE arbitration; or (iii) the NASD or NYSE declines to accept such person's claim(s) for arbitration.

## ARBITRATION RULES AND PROCEDURES

The following rules and procedures are based on, and largely incorporate, the Employment Dispute Resolution Rules (the "Rules") of the American Arbitration Association (the "AAA"). Citigroup Corporate Center modified and expanded these rules and procedures in certain respects.

In particular, provisions regarding fees and costs have been modified to provide that many of the costs typically shared by the parties will be borne by Citigroup Corporate Center. In addition, provisions permitting limited discovery have been added to ensure equal access to relevant information.

**1. Initiation of arbitration proceeding**

To initiate arbitration you must send a written demand for arbitration to the Senior Human Resources Officer for Citigroup Corporate Center (SHRO). The demand must be received by the SHRO within the time period provided by the statute of limitations applicable to the claim(s) set forth in the demand.

The demand shall set forth a statement of the nature of the dispute, including the alleged act or omission at issue; the names of all persons involved in the dispute; the amount in controversy, if any; and the remedy sought. Within thirty (30) calendar days of receiving such demand, or as soon as possible thereafter, the Citigroup Corporate Center shall file the demand with the appropriate office of the AAA.

**2. Appointment of neutral arbitrator**

The AAA shall appoint one neutral arbitrator from its Employment Dispute Resolution roster unless both parties request that a panel of three (3) arbitrators be appointed. If the parties cannot agree upon the number of arbitrators, the AAA shall have the authority to determine the number of arbitrators. In the event a panel of arbitrators is appointed, all decisions of the panel must be by a majority and the use of the word "arbitrator" shall refer to the panel. It is the intent of Citigroup Corporate Center that the prospective arbitrators be diverse, experienced, knowledgeable regarding employment-related claims, neutral, and duly qualified to serve as an arbitrator under the AAA's rules.

The arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the demand, the AAA shall submit to each party an identical list of proposed arbitrators;

[2] *Nothing in this provision shall be construed to negate the mutuality of this agreement to arbitrate — and Citigroup Corporate Center explicitly agrees to arbitrate, pursuant to this Policy — any legally protected right related to a disputed disciplinary action after it has been taken.*

(b) Each party shall then have ten (10) business days from the mailing date of the list to cross off any two (2) names to which the party objects, number the remaining names in order of preference, and return the list to the AAA;

(c) If a party does not return the list within the time specified, all persons on the list shall be deemed acceptable to that party; and

(d) The AAA shall invite the acceptance of the arbitrators remaining on the list in the order of preference specified by the parties to the extent the order can be reconciled by the AAA.

In the event the parties fail to agree on any of the persons named, or if an acceptable arbitrator is unwilling to act, the AAA shall issue additional lists.

**3. Qualifications of neutral arbitrator**

No person shall serve as a neutral arbitrator in any matter in which that person has any financial or personal interest in the result of the proceeding. Prior to accepting appointment the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or to create a presumption of bias. Upon receipt of such information, the AAA will either replace that person or communicate the information to the parties for comment. Thereafter, the AAA may disqualify that person and its decision shall be conclusive. Vacancies shall be filled in accordance with Paragraph 2 above.

**4. Vacancies**

The AAA is authorized to substitute another arbitrator if a vacancy occurs or if an appointed arbitrator is unable to serve promptly.

**5. Proceedings**

The hearing shall be conducted by the arbitrator in whatever manner will most expeditiously permit full presentation of evidence and arguments of the parties. The arbitrator shall set the date, time, and place of the hearing, notice of which must be given to the parties by the AAA at least thirty (30) calendar days in advance unless the parties agree otherwise. In the event the hearing cannot reasonably be completed in one day, the arbitrator will schedule the hearing to be continued on a mutually convenient date.

**6. Representation**

Any party may be represented by an attorney or other representative (excluding any company supervisory employee) or by himself or herself. For an employee or former employee without representation, the AAA will, upon request, provide reference to institutions that might offer assistance.

**7. Confidentiality of and attendance at hearing**

The arbitrator shall maintain the confidentiality of the hearings unless the law provides to the contrary. The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator shall also have the authority to decide whether any person who is not a witness may attend the hearing.

**8. Postponement**

The arbitrator for good cause shown may postpone any hearing upon the request of a party or upon the arbitrator's own initiative and shall also grant such postponement when all of the parties agree thereto.

**9. Oaths**

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

**10. Stenographic record**

There shall be no stenographic record of these proceedings unless either party requests it. In the event a party requests a stenographic record, that party shall bear the cost of such a record. If both parties request a stenographic record, the cost shall be borne equally by the parties.

**11. Arbitration in the absence of a party**

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of the award.

**12. Discovery**

Each party shall be entitled to propound and serve upon the other party one set of interrogatories (limited to the identification of potential witnesses) and one set of requests for the production of documents in a form consistent with the Federal Rules of Civil Procedure. Upon the request of a party, the arbitrator may order further discovery consistent with the rules of the AAA and the expedited nature of arbitration.

**13. Prehearing motions**

The arbitrator shall be authorized to consider and rule upon prehearing motions, including dispositive motions.

**14. Evidence**

The arbitrator shall be the judge of the relevance, and materiality of the evidence offered and conformity to legal rules of evidence shall not be necessary.

**15. Evidence by affidavit and filing of documents**

The arbitrator may receive and consider the evidence of witnesses by affidavit but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission. All documents to be considered by the arbitrator shall be filed at the hearing.

**16. Closing of hearing**

The arbitrator shall ask whether the parties have any further proof to offer or witnesses to be heard. Upon receiving negative replies, or if satisfied that the record is complete, the arbitrator shall declare the hearing closed and the minutes thereof shall be recorded.

**17. Reopening of hearing**

The hearing may be reopened on the arbitrator's initiative or upon application of a party, at any time before the award is made. The arbitrator may reopen the hearing and shall have fourteen (14) days from the closing of the reopened hearing within which to make an award.

**18. Waiver of procedures**

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these procedures has not been complied with, and who fails to state objections thereto in writing, shall be deemed to have waived the right to object.

**19. Time of award**

The award shall be made promptly by the arbitrator unless otherwise agreed by the parties or specified by law. The arbitrator shall be instructed to make the award within thirty (30) days of the close of the hearing or as soon as possible thereafter.

**20. Award**

*(a) Form.* The award shall be in writing and shall be signed by the arbitrator. If either party requests, such award shall set forth in summary form the reasons for the arbitrator's determination. All awards shall be executed in the manner required by law. The award shall be final and binding upon the employee and Citigroup Corporate Center, and judicial review shall be limited as provided by law.

*(b) Scope of relief.* The arbitrator shall be governed by applicable federal, state, and/or local law. Furthermore, the arbitrator shall be bound by applicable company policies and procedures and shall not have the authority to alter or otherwise modify the parties' at-will relationship or substitute his or her judgment for the lawful business judgment of company management. The arbitrator shall have the authority to award compensatory damages and injunctive relief to the extent permitted by applicable law. The arbitrator shall have the authority to award punitive or exemplary damages or attorneys' fees to the extent permitted by applicable law. The arbitrator shall not have the authority to make any award that is arbitrary and capricious or to award to Citigroup Corporate Center the costs of the arbitration that it is otherwise required to bear under this policy.

**21. Delivery of award to parties**

The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail addressed to a party or its representative at the last known address via certified mail, return receipt, personal service of the award or the filing of the award in any manner that is permitted by law.

**22. Enforcement**

The award of the arbitrator may be enforced under the terms of the Federal Arbitration Act (Title 9 U.S.C.) and/or under the law of any state to the maximum extent possible. If a court determines that the award is not completely enforceable, it shall be enforced and binding on both parties to the maximum extent permitted by law. If any part of this procedure is held to be void or unenforceable, the remainder of the procedure will be enforceable and any part may be severed from the remainder as appropriate.

**23. Judicial proceedings and exclusion of liability**

(a) Neither the AAA nor any arbitrator in a proceeding under these procedures is a necessary party in judicial proceedings relating to the arbitration.

(b) Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**24. Expenses and fees**

Unless otherwise precluded by applicable law, expenses and fees shall be allocated as follows:

(a) Filing fees. Citigroup Corporate Center shall pay any filing fee required by the AAA.

(b) Hearing fees and arbitrator fees. Citigroup Corporate Center shall pay the hearing fee and arbitrator fee for the hearing.

(c) Postponement/cancellation fees. Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party causing the postponement or cancellation.

(d) Other expenses. The expenses of witnesses shall be paid by the party requiring the presence of such witnesses. All other ordinary and reasonable expenses of the arbitration including hearing room expenses, travel expenses of the arbitrator, AAA representatives, and any witness produced at the arbitrator's direction, shall be paid completely by Citigroup Corporate Center.

(e) Legal fees and expenses. Each side shall pay its own legal fees and expenses subject to Paragraph 20(b) above.

The allocation of expenses as provided for in items (a) through (d) may not be disturbed by the arbitrator except where the arbitrator determines that a party's claims were frivolous or were asserted in bad faith.

**25. Serving of notice**

Any parties, notices, or process necessary or proper for the initiation or continuation of an arbitration under these procedures; for any court action in connection therewith; or for the entry of judgment on an award made under these procedures may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard thereto has been granted to the party. The AAA and the parties may also use facsimile transmission, telex, telegram, or other written forms of electronic communication to give the notices required by these procedures, provided that such notice is confirmed by the telephone or subsequent mailing to all affected parties.

**26. Time period for arbitration**

Any proceeding under this procedure must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant.

**27. Amendment or termination of arbitration policy**

Citigroup Corporate Center reserves the right to revise, amend, modify, or discontinue the Policy at any time in its sole discretion. Such amendments may be made by publishing them in the *Handbook* or by separate release to employees and shall be effective thirty (30) calendar days after such amendments are provided to employees. Your continuation of employment after receiving such amendments shall be deemed acceptance of the amended terms.

**28. Interpretation and application of procedure**

The arbitrator shall interpret and apply these procedures insofar as they relate to the arbitrator's powers and duties. All other procedures shall be interpreted and applied by the AAA.

# EXHIBIT D

citigroup

# U.S. Corporate Center

# EMPLOYEE HANDBOOK

WORKING TOGETHER:

OUR POLICIES, GUIDELINES,

AND EXPECTATIONS

# Introduction

This *Employee Handbook* ("Handbook") is your basic source of Human Resources information. It describes the key Human Resources policies, procedures, and guidelines for employees working in the Citigroup Corporate Center (the "Company") in the United States.

We expect each employee to read this *Handbook* carefully, as it is a valuable reference for understanding your responsibilities and the Company's policies. Its purpose is to familiarize you with what the Company expects from you and how you can be most successful in working for the Company. It is difficult to anticipate the almost infinite number of situations that can arise during the employment relationship, and this *Handbook* is not meant to cover every specific instance or operating procedure of your department. Additional operating procedures may be provided by your manager.

To respond to the changing needs of our employees and the Company, the Company reserves the right at any time to create, amend, supplement, modify, or rescind, in whole or in part, any policy, procedure, benefit, or provision of this *Handbook*, or the *Handbook* itself, as it deems appropriate, with or without notice. In the event of any conflict between the description of employee benefits in this *Handbook*, the Summary Plan Descriptions, or the plan documents, the plan documents, any changes thereto, and applicable laws shall govern.

Nothing contained in this *Handbook* (nor the *Handbook* itself) constitutes a contract of employment or a guarantee that your employment will continue for any specified period of time. Bear in mind that your employment with the Company is at will, which means it can be terminated by you or the Company at any time, with or without notice, for no reason or any reason not otherwise prohibited by law.

This *Handbook* supersedes any employee handbooks or employment policies that may have applied to you as an employee of the Company or Citigroup that are inconsistent with and precede this *Handbook*'s distribution. *Where the law of the state in which you work is more generous than the provisions in this* Handbook, *that state law will apply.*

If you have any questions about the interpretation or application of any information in this *Handbook*, or if you have a question not answered here, see your manager or Human Resources representative.

***Important: This* Handbook *contains a provision that requires you and the Company to submit employment-related disputes to binding arbitration (refer to Appendix). Please read that provision carefully. No provision in this* Handbook *or elsewhere is intended to constitute a waiver, nor to be construed to constitute a waiver, of your or the Company's right to compel arbitration of employment-related disputes based on legally protected rights.***

U.S. CORPORATE CENTER

2002 EMPLOYEE HANDBOOK

# Receipt Form

*Please complete this form and return it to your Human Resources representative within 30 days of receipt. Your failure to do so will not affect the applicability of the* Employee Handbook *or any of its provisions to you.*

I have received the Company's *Employee Handbook* and, in consideration of my continued at-will employment by the Company, I agree to comply with it and all of the policies and procedures of the Company. I have read this *Handbook* carefully and I understand that I should contact my manager or Human Resources representative with any questions.

I understand that nothing contained in this *Handbook* (nor the *Handbook* itself) is considered a contract of employment or constitutes a guarantee that my employment will continue for any specified period of time and that my employment with the Company is at will, which means it can be terminated by me or the Company at any time, with or without notice, for no reason or any reason not otherwise prohibited by law.

**Important:** I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes based on legally protected rights to binding arbitration (refer to Appendix). I have read that provision carefully. I also understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor to be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related legal disputes.

Signed: ______________________________ Date: ______________

Name (please print): ______________________________

Department: ______________________________

